## 43286. LAWSON v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
### (347 SE2d 565)

GREGORY, Justice.

This case is before the court on a certified question from the U. S. Court of Appeals for the Eleventh Circuit. The facts and the question, as set out in the opinion certifying the question, are as follows:

"Bobby Lawson, an epileptic, claims that he was injured on November 12, 1982, when he suffered an epileptic seizure, fell down in the middle of North Peachtree road, in Atlanta, and was struck by an automobile driven by Susan McCahan, the daughter of a State Farm insured. Although some question exists as to whether McCahan's vehicle actually struck Lawson, State Farm decided to verify for payment the reasonable medical expenses associated with Lawson's injuries. It is undisputed that State Farm paid all claims for personal injury protection benefits submitted by Lawson at least seven months prior to his filing suit. Nevertheless, Lawson brought this action against State Farm for statutory penalties, punitive damages, and attorney's fees pursuant to OCGA § 33-34-6 (b) and (c) for State Farm's failure to pay his claims within the time period required by the statute.

"State Farm moved for summary judgment contending that the statute did not create an action solely to recover benefits and that the payment of all of Lawson's claims for benefits before the initiation of his lawsuit extinguished any cause of action which he might have had

for penalties and attorney's fees. Although it found no authority construing the material language of the relevant subsections, the district court agreed with State Farm, stating: 'The operative words of subsection b which create a cause of action are those which state that "the person entitled to the benefits may bring an action to recover them." However, if the benefits have already been recovered, as is the case here, the statute clearly provides no cause of action. Likewise, subsection c, which deals with the recovery of punitive damages, also grants a cause of action "to recover the benefits" and Lawson in this case clearly has no such cause of action.'

"We believe that the issue of Georgia law raised by Lawson's appeal is appropriate for resolution by the highest court of Georgia. We therefore certify the following question: 'Whether an action "to recover benefits" is a prerequisite to maintaining an action for penalties or punitive damages under OCGA § 33-34-6 (b) and (c)?'"

We answer the certified question in the negative. OCGA § 33-34-6 (b) provides that benefits required to be paid without regard to fault become overdue when not paid within thirty days after the insurer receives reasonable proof of loss. This subsection states that "[i]n the event the insurer fails to pay each benefit when due, the person entitled to the benefits may bring an action to recover them and the insurer must show that its failure or refusal to pay was in good faith, otherwise the insurer shall be liable for a penalty not exceeding 25 percent of the amount due and reasonable attorney's fees." OCGA § 33-34-6 (c) provides in addition to the penalties of subsection (b), "in the event that an insurer fails or refuses to pay a person the benefit which the person is entitled to under this chapter within 60 days after proper proof of loss has been filed, the person may bring an action to recover the benefits; and, if the insurer fails to prove that its failure or refusal to pay the benefits was in good faith, the insurer shall be subject to punitive damages."

The apparent purpose of the legislature in enacting the 30/60-day requirements of OCGA § 33-34-6 was to assure prompt payment of claims by imposing penalties and damages on insurers failing to meet the deadlines. If an insurer could avoid these penalties and damages by making payment after the deadline, there would be no incentive in the statute to meet the deadline. The issue of the insurer's good faith is to be determined by the events and circumstances during the 30/60-day time period. Payment thereafter to a claimant's medical suppliers, as in this case, should not prevent a suit by the claimant for the penalties and damages. To interpret the statute otherwise would make it possible for unscrupulous insurers to ignore the due date of the statute with impunity so long as payment to suppliers is made sometime before suit for benefits is brought. As we understand the statute, the words, "failure or refusal to pay" refer to payment "when

due," and do not authorize a late payment. It is not simply the total failure to pay, but the failure to make *timely* payment which gives rise to penalties and damages. In our view the conjunctive expressions relating the suit to recover benefits to the recovery of penalties and damages should not be construed so as to defeat the purpose of the statute.

Whether the acceptance of late payment by the claimant himself should estop him from bringing a suit for penalties and damages is a different issue, and not before us in this case.

We hold that an action to recover benefits is not a prerequisite to maintaining an action for penalties or punitive damages under OCGA § 33-34-6.

*Certified question answered in the negative. All the Justices concur, except Marshall, C. J., Weltner and Hunt, JJ., who dissent.*

HUNT, Justice, dissenting.

In reaching its decision, the majority concludes that: "The apparent purpose of the legislature in enacting the 30/60-day requirements of OCGA § 33-34-6 was to assure prompt payment of claims by imposing penalties and damages on insurers failing to meet those deadlines." I disagree. In my view, a plain reading of the statute shows that its purpose is to assure prompt payment by imposing penalties and damages where the statutory deadline is not met *and* the claimant finds it necessary to resort to litigation. Besides distorting the language of the statute, the majority opinion sets the stage for the filing of collateral lawsuits after the underlying claims have long been resolved and the matter should have been conclusively put to rest. This, in turn, wreaks havoc with a fundamental purpose of our no-fault law — that of reducing collateral litigation. *Teasley v. Mathis*, 243 Ga. 561, 563 (255 SE2d 57) (1979). I respectfully dissent.

I am authorized to state that Chief Justice Marshall and Justice Weltner join in this dissent.

DECIDED SEPTEMBER 3, 1986 —
RECONSIDERATION DENIED SEPTEMBER 18, 1986.

*Harold D. Corlew,* for appellant.
*Powell, Goldstein, Frazer & Murphy, Eugene G. Partain, W. Gordon Hamlin, Jr., C. Scott Greene,* for appellee.