### 3729.   BALLARD *et al. v.* THE STATE.

1. The instructions of a trial judge should present to the jury with reasonable fullness the law applicable to the various phases of the evidence introduced, but the judge is not required to follow an ignis fatuus in attempting to enforce or correct a statement of legal propositions which are only collaterally connected with the main issue. Any attempt on the part of the court to apply the law to argument addressed merely to the credibility of testimony is likely to be argumentative and erro-neous, unless the language used be very carefully guarded, and especially is this true where the instructions relate to a particular incident in the testimony upon which rests the stress of the case.
2. When a timely objection is made to improper argument, the court should rule directly upon the question presented for a joinder of two antagonistic contentions, or a waiving of the issue raised by the objection is likely to be prejudicial to the complaining party.

DECIDED MAY 7, 1912.

Indictment for gaming; from Campbell superior court—Judge Roan.　August 26, 1911.

*J. F. Golightly,* for plaintiff in error.

*C. S. Reid, solicitor-general,* contra.

RUSSELL, J.　There is evidence which would have authorized the conviction of the defendants, and yet it can not be said that this is not a close case, for the only direct witness for the State was an accomplice, and there was evidence of contradictory statements which would have authorized the jury to disregard his testimony. If the trial had been absolutely free from error we should unhesitatingly affirm the judgment refusing a new trial, upon the well-settled rule that, there being some evidence which would have authorized the verdict, and the finding of the jury being approved by the trial judge, this court is without jurisdiction to pass upon an issue of fact; but in view of the fact that the only witness to the gaming was, according to his testimony, avowedly an accomplice, not only in the alleged gaming but in an arson with which the defendants were charged, and the merits of which appear to have been intermingled in the trial now under review, the really pertinent subject of inquiry is whether the circumstances of which complaint is made in the special assignments of error were of such a nature as deprived the plaintiffs in error of their right to a fair and impartial trial.　If these circumstances were prejudicial, it can not truly be said that as there was evidence which would have authorized the conviction, the accused were not hurt; because it can not be said that if the trial had been free from error, the jury would have believed the witness who was confessedly an accomplice, and who was shown by testimony in the case to have made contradictory statements.　We have been in so much doubt in regard to the case that we ordered that it be argued a second time.　After mature consideration of the assignments of error, a majority of the court are of the opinion that a new trial should be ordered, in order that the guilt or innocence of the plaintiffs in error may be determined, free from such extraneous influences as are complained of in the special assignments of error, and which are not likely to recur upon a second trial.　In reaching this conclusion we recognize fully the absolute impartiality of the learned trial judge who presided in the cause, and yet we are not able to escape the conviction that the matters of which complaint is made in the

special assignments of error naturally tended to prejudice the jury against the accused, although this result was not at all intended, either by the court or the solicitor-general.

1. Treated as an abstract statement of the law, there is no error in the instruction of the court that the accused could be convicted of a misdemeanor upon the testimony of an accomplice, though his testimony was not corroborated. But when the judge, as the jury may have understood it, in apparently direct response to the argument of counsel for the accused, emphasized the difference between the rules as to felonies and misdemeanors, by charging the jury that "if this was a felony being tried, and there was no evidence except the testimony of George Mitchell, and the jury believed he was an accomplice and assisted in burning the house, then there could be no conviction; but I charge you, gentlemen, this is not the rule in a misdemeanor case, and you are not now trying a felony; the case you are now trying is what is known in law as a misdemeanor," and thereafter further instructed the jury, that while they might inquire whether the witness George Mitchell (naming him) had been corroborated, still they might, if they saw proper, find the defendants guilty on the evidence of Mitchell, even though he was not corroborated, the instruction, in our opinion, became so argumentative as to be objectionable. The instruction of a trial judge should present to the jury with reasonable fullness the law applicable to the various phases of the evidence introduced, but the judge is not required to follow an ignis fatuus in attempting to enforce or correct a statement of legal propositions which are only collaterally connected with the main issue. Any attempt on the part of the court to apply the law to arguments addressed merely to the credibility of testimony is likely to be argumentative and erroneous, unless the language used is very carefully guarded, and especially is this true where the instructions relate to a particular incident in the testimony upon which rests the stress of the case.

2. We think that the language employed by the court in passing upon the motion for mistrial was prejudicial, because it tended to minimize the objection interposed by counsel for the accused, and was likely to mislead the jury by impressing them that the objection was frivolous. The solicitor-general, in response to the criticism of counsel for the accused, that the State should have

tried the arson case pending against the accused before trying the indictment for gaming, stated that it was immaterial which case was tried first, because even if the State had elected to try the arson case first, the accused would have had to remain in jail any way, because of inability to give bond.　In response to this statement counsel for the accused moved for a mistrial, and the judge, in declining to order a mistrial, instructed the jury that what was said by counsel on either side about this matter had nothing to do with the case.　Our first impression was that this statement of the judge could not have prejudiced the accused; because it was, no doubt, intended to be fair to both parties to the cause.　However, the court's statement to the jury that what was said by counsel on either side about this matter had nothing to do with the case was in fact not so much a rebuke to the solicitor-general, for arguing to the jury circumstances which had no pertinency to the guilt or innocence of the accused, as it was an intimation that there was no point in the objection made to the argument; and for that reason it might be construed by the jury as an intimation that the objection was unimportant and immaterial.　In rulings upon testimony and argument the trial court should carefully and cautiously guard against the possibility of saying anything that can be construed as an intimation adverse to the contention of either party.　It appears to us that it can, with good reason, be insisted that the mere statement that "what was said by counsel on either side about this matter had nothing to do with the case" could reasonably have been taken by the jury as a ruling adverse to the contention of counsel for the accused that the statement of the solicitor-general was improper, or certainly that even if it was, it was of so little consequence that the objection to it was unimportant.　As a matter of fact, the question as to whether the accused could give bond or would have to stay in jail was a matter of no concern to the jury, and yet we are aware that there are few things upon which jurors and taxpayers look with less favor than the probability of paying jail fees when the accused, if guilty, might be employed upon the public roads.　Upon the objection made, we think the court should have instructed the jury, not that what the counsel said about it had nothing to do with the case, but (in direct response to the objection) should have instructed the jury that they were not concerned with whether the

accused could not give bond, and that ability or inability to give bond should not affect the jury's consideration of the case or have any bearing whatever on their verdict. When a timely objection is made to improper argument the court should rule directly upon the question presented for a joinder of two antagonistic contentions, or a waiving of the issue raised by the objection is likely to be prejudicial to the complaining party. Upon the whole we are of the opinion that it can not safely be said that the matters to which the two special assignments of error relate did not have the effect of prejudicing the rights of the accused upon the trial; and for this reason the judgment refusing a new trial is        *Reversed.*

HILL, C. J., dissenting. While fully agreeing to the abstract correctness of much that is said by Judge Russell, I do not concur in the decision of the majority. I think the trial judge fairly stated the statutory difference relating to the evidence of an accomplice in felony and misdemeanor cases, and made a concrete application of that law to the facts of the case and the contention of counsel. I also think that the presiding judge fully drew the sting from the improper remarks of the solicitor-general, if, indeed, they were improper. Both special assignments of error, in my opinion, have no material relation to the merits of the case; and the consideration given to them by the majority of the court is largely in excess of their importance. ·