## S90A0350. BROOMALL v. THE STATE.
## S90A0351. BOOHER v. THE STATE.
### (391 SE2d 918)

HUNT, Justice.

Nora V. Broomall and Cecil Eugene Booher were convicted of the contract killing of her husband, George Broomall, at Callanwolde Fine Arts Center where the victim, a DeKalb County maintenance man, worked. Booher was also convicted of burglary with intent to commit theft.[1] They appeal, raising the general grounds and several separate enumerations of error regarding the admission of evidence and the charge to the jury. We affirm both cases.

The jury was authorized to find that in order to obtain life insurance proceeds on the victim's life, defendants Broomall and Booher conspired to kill him at Callanwolde and to remove some items, including several cases of liquor and some stereo equipment, from the premises to make it appear that the victim had been killed when he

---

[1] Defendant Booher was also convicted of burglary with intent to commit murder, but that conviction was merged with that for murder. The killing occurred on October 9, 1987, in DeKalb County. The defendants were indicted during the November term 1987, convicted by a jury and sentenced by the court on March 26, 1988. Broomall filed her motion for new trial on April 12; Booher, on April 25, 1988. The transcript was certified on September 30, 1988, Broomall's motion for new trial was amended on March 20 and 21, 1989, and both were denied on March 28, 1989. Defendants filed their notices of appeal on April 26, 1989, and the appeals were docketed here on December 13, and submitted for decision on February 5, 1990.

surprised a burglary in progress as he came to work on Friday, October 9, 1987. Booher stabbed the victim twice in the chest, then slit his throat. Recovery of the victim's belt buckle, his wallet and its contents, and the items taken from Callanwolde from the defendants' possession independently supported the first custodial statement of defendant Broomall in which she stated that for $25,000 from the expected life insurance benefits, Booher agreed to stab her husband with the knife she had purchased from a flea market.

Booher contended, however, that he assisted the victim, at the victim's insistence, in committing suicide at Callanwolde, while making it appear he had been killed during a burglary, so that his wife would benefit from the insurance money. No evidence in the victim's personal life from sources other than the defendants' testimony indicated he was currently depressed or contemplating suicide. The victim, according to Booher, had promised to leave a note in a safe deposit box instructing defendant Broomall to pay Booher $25,000 from the life insurance proceeds. No safe deposit box or note from the victim was discovered.

When she was told that Booher had not implicated her in the crime, defendant Broomall recanted her earlier statement and insisted she knew nothing about either her husband's plan to commit suicide or Booher's plot to kill her husband.

1. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found both defendants guilty of malice murder, and Booher guilty of burglary, beyond a reasonable doubt.[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State*, 245 Ga. 89, 90 (263 SE2d 131) (1980).

### Nora Broomall's Appeal

2. Defendant Broomall contends the trial court erred in allowing an insurance agent to testify to a statement defendant Broomall made to her over the telephone while in custody on October 20, 1987. She contends the statements were inadmissible because the state failed to comply with OCGA § 17-7-210 (a), requiring the prosecution to serve

---

[2] Since the jury found the defendants guilty of malice murder and specifically rejected a verdict of felony murder as charged with aggravated assault the underlying felony, we need not reach the sufficiency of the evidence to support that charge. We do hold, however, that the indictment, that Nora V. Broomall and Cecil Eugene Booher "unlawfully and with malice aforethought, did kill, murder, and cause the death of George Broomall, a human being, by stabbing and cutting him, the said George Broomall, with a knife," and the evidence presented at trial were sufficient to authorize the giving of the felony murder charge. We find no error under *Lyman v. State*, 188 Ga. App. 790, 792 (374 SE2d 563) (1988), as urged by defendant Broomall.

the defendant with copies of her in-custody statements at least ten days before trial. During the telephone call, defendant Broomall told the insurance agent that she was in jail because "they caught the guys that did it. I guess they talked."

The state had interviewed the insurance agent in November 1987, but the focus of that interview had been on the circumstances surrounding the purchase of the victim's life insurance rather than on the contents of the telephone conversation. When the prosecution reinterviewed the agent a few days prior to trial, however, defendant Broomall's statement was first revealed. Defense counsel were immediately notified by telephone of the incriminating statement and subsequently served in writing in accordance with the statute. OCGA § 17-7-210.

When an objection was raised to this evidence at the trial, the trial court decided the evidence was newly discovered and was revealed as soon as practicable after its discovery. Defense counsel were then afforded an opportunity to question the witness outside the presence of the jury. OCGA § 17-7-210 (e). Pretermitting whether this comment qualifies as an in-custody statement subject to the statute, the trial court's decision that it was governed by OCGA § 17-7-210 (e) was not erroneous. See *Blanchard v. State*, 247 Ga. 415, 419 (276 SE2d 593) (1981).

3. Defendant Broomall's contention her initial in-custody statement was induced by hope of benefit and fear of injury is meritless. After a thorough *Jackson v. Denno* hearing, the trial court specifically found that her statement was not the result of duress or coercion; that decision is not clearly erroneous and must be upheld on appeal. *Lobdell v. State*, 256 Ga. 769, 773 (353 SE2d 799) (1987); *James v. State*, 257 Ga. 62, 63 (355 SE2d 60) (1987).

4. Defendant Broomall complains of the trial court's refusal to give three of her requests to charge. The requests not given were:

(a) I charge you that if a defendant mistakenly believes that his conduct is lawful, such mistake shall be no defense to the offense[;] however, such mistake may be germane to the issue of the defendant's intent. The state is still required to prove that the defendant had the criminal intention to commit the offense beyond a reasonable doubt.

(b) I charge you that the consent of the victim may be a defense to murder if the defendant in the instant case had no evil disposition toward the victim but acted only at the victim's own earnest request to save him from what the victim considered to be a greater evil.

(c) Suicide is not a crime in the state of Georgia.

The gist of these requests to charge is to suggest to the jury that certain conduct, involved in aiding the commission of a suicide,[3] may not amount to malice, and consequently would not support a malice murder conviction. As to (a) and (b), to the extent they are not incorrect statements of law,[4] they are argumentative and the trial court did not err in refusing them. *Ballard v. State*, 11 Ga. App. 104 (1) (74 SE 846) (1912). Moreover, the trial court gave the jury extensive instructions on malice, criminal intent and parties to a crime.[5] It charged, additionally, that:

Should you find beyond a reasonable doubt that the defendant had knowledge that the *crime of murder* was being com-

---

[3] Booher's own testimony reveals more than passive assistance in the victim's "suicide." He claimed the victim's plan was to make the fatal, first stab himself and then have Booher make a second stab and slit the victim's throat (in order to shock the "rich"). At trial, Booher testified the victim, in pursuance of this plan, placed the knife over his heart. When the victim did not complete the act, Booher drove it in before making the other two wounds. On the stand he stated:

"When I propped the knife this way and he took it and held the knife this way he said, 'I want to make sure it goes in the right angle.' From that point I did this, pulled it in.

"Was he holding the knife?

"Yes. . . .

"What did you then do with your hands clasped in this fashion ["My hands are touching his hand where he is holding the knife."]?

"I pulled them sharply and pulled the knife into his chest. . . ."

Medical testimony corroborated that the wound through the heart was fatal.

[4] While in this state there is no statutory proscription relative to suicide, nor aiding suicide, we do not view a killing by consent of, or at the request of, the victim to be "legal." Neither does a benevolent motive, of itself, negate malice. It does not necessarily exclude ". . . that deliberate intention unlawfully to take the life of another human being. . . ." OCGA § 16-5-1 (b).

In their briefs, the parties treat request (a) as though it involves a mistake of fact. OCGA § 16-3-5 provides that "[a] person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact, which, if true, would have justified the act or omission." This principle is not applicable here, as the misapprehension, if any, involved the legal consequence of assisting a suicide.

[5] As to parties, the court charged:

Every person concerned in the commission of a crime is a party to it and may be charged with and convicted of commission of the crime. A person is concerned in the commission of a crime only if he or she directly commits the crime or intentionally aids or abets in the commission of the crime or . . . intentionally advises, encourages, hires, counsels or procures another to commit the crime.

I charge you that approval of an act, not amounting to encouragement, will not suffice to show that a defendant is a party to the crime. Knowledge on the part of the defendant that the crime of murder was being committed and that she knowingly and intentionally participated in or aided and abetted in the commission of such crime must be proved by the State beyond a reasonable doubt.

If you find from the evidence in this case that the defendant had no knowledge that a crime was being committed, or that the defendant did not knowingly and intentionally commit, participate, aid or abet in the commission of the alleged offense, then it would be your duty to acquit that defendant.

mitted, and that she knowingly and intentionally participated, aided or abetted in the commission thereof, then you would be authorized to convict that defendant. [Emphasis supplied.]

Thus, the principles relating to the intent element of murder were adequately and fairly presented in the charge given by the court and it was not error to refuse to present the substance of (a) and (b) in the manner requested. See, e.g., *Irwin v. State*, 244 Ga. 850, 853 (262 SE2d 99) (1979).

Although the statement "suicide is not a crime in Georgia" is a true statement, it was not, in view of our analysis involving requests (a) and (b), an appropriate legal instruction, and no error was committed in refusing to give it.

5. The trial court committed no error in admitting the complained of photographs. *Leggett v. State*, 256 Ga. 274, 275 (347 SE2d 580) (1986); *Goss v. State*, 255 Ga. 678, 680 (341 SE2d 448) (1986).

### Eugene Booher's Appeal

6. Booher also challenges the use of his custodial statement at the trial of their case. While being transported to the jail, Booher was read his *Miranda* rights, and commented: "I wonder where I could get an attorney at this time of night." After arriving, he signed a waiver of his rights and gave a statement to the police. He complains on appeal that after having made an admittedly equivocal request for an attorney, the police erred in questioning him on any aspect of his case before clarifying that request. *Edwards v. Arizona*, 451 U. S. 477, 484 (101 SC 1880, 68 LE2d 378) (1981).

Booher testified at the *Jackson-Denno* hearing, however, that when he reached the interrogation room, he was given a written copy of his *Miranda* rights, which he read and fully understood, but he did not want an attorney present at that time. He was told that attorneys were available 24 hours per day and was given an opportunity to use the telephone, but he refused and said he just wanted to talk. Booher's testimony at the hearing that he changed his mind in the middle of his statement to the police was not supported by the tape-recorded statement and the trial court did not so find.

Based on this evidence, the decision of the trial court that Booher waived his right to have an attorney present and that the statement was knowing and voluntary is not clearly erroneous. *High v. State*, 233 Ga. 153 (210 SE2d 673) (1974).

Having found no reversible error, we affirm the convictions of defendants Broomall and Booher.

*Judgments affirmed. All the Justices concur.*

Decided May 31, 1990.

*Hartley, Puls & O'Connor, Alton G. Hartley,* for appellant (case no. S90A0350).

*Darel C. Mitchell,* for appellant (case no. S90A0351).

*Robert E. Wilson, District Attorney, Eleni A. Pryles, R. Stephen Roberts, Desiree L. Sutton, Assistant District Attorneys, Michael J. Bowers, Attorney General, Leonora Grant,* for appellee.